Sophie Grebe, Plaintiff-Appellee, v. Vacek & Company, Inc., a Corporation, Defendant-Appellant.

Gen. No. 52,151.

First District.

December 2, 1968.

Philip S. Aimen, of Chicago, for appellant.

Michael J. Cudahy, of Elmwood Park (Morris Solomon, of Chicago, of counsel), for appellee.

MORAN, J.

Defendant appeals from a decree of the Chancery Division of the Circuit Court of Cook County, Illinois.

Plaintiff filed a complaint on August 11, 1964, seeking specific performance of an alleged oral agreement made by and between plaintiff and defendant to sell, transfer and assign to the plaintiff a beneficial interest in a certain land trust; or, in the alternative, to recover $5,000 alleged paid to defendant by plaintiff as a down payment for the purchase of said beneficial interest. The cause was referred to a Master-In-Chancery who heard the evidence and the testimony of the plaintiff who was the only witness to testify in the proceedings.

Plaintiff testified that on June 26, 1963, one Rusin, who was the employer of plaintiff's brother-in-law, John Grebe, while accompanied by Grebe, proposed to plaintiff that if she would put up $5,000 so that John Grebe could purchase an apartment building, plaintiff would receive some interest in a land trust in which this building was a

part, which interest she would retain as security for her money until the property could be refinanced, at which time her interests in the land trust would be extinguished and she would get back her $5,000 plus a $1,000 commission; that Rusin told her that he was a real estate broker for the defendant, and that plaintiff should make her check payable to the defendant who was the owner of the apartment building. Plaintiff drew a check for $5,000 payable to defendant, Vacek & Company, which was cashed.

She further testified that she did not see Rusin again until a couple of weeks later, when he told her that he was no longer involved in the deal. In July of 1963, plaintiff visited the defendant and talked to a Mr. Kezon, President of Vacek & Company, who told her that the mortgages on the apartment building could not be refinanced because of John Grebe's poor credit rating, but that plaintiff could take over the property if she put up an additional $10,000. Plaintiff told Kezon that she could not put up more money and that she was interested only in getting her money back. Kezon never told plaintiff he would assign an interest in the trust to her nor did he offer to return the money, nor did he tell her that Rusin was not acting for the defendant. Plaintiff never saw Kezon again after the July meeting.

At the close of the plaintiff's case, defendants moved to dismiss the complaint for want of equity and to strike those portions of the plaintiff's testimony which pertained to her conversations with Frank Rusin. The master found that the plaintiff made out a prima facie case and recommended that said motions be denied and that the cause be re-referred for the purpose of hearing the testimony of the defendants and returned his Master's Report to the court together with defendant's objections which were made exceptions thereto.

The court overruled defendant's exceptions and re-referred said cause to the master for further evidence.

Defendant elected to submit plaintiff's part of the case to the court on the record as it then stood and not submit any evidence, which election was reported to the court in the Supplemental Master's Report.

On January 13, 1967, the court entered judgment in favor of the plaintiff and against the defendant in the sum of $6,000 and costs, from which judgment this appeal is taken.

The defendant first contends that the court erred in denying defendant's motion to strike plaintiff's testimony regarding her out-of-court conversations with Rusin, which it contends were offered solely for the purpose of proving the truth of the matters asserted therein and, as such, was plainly hearsay testimony and was incompetent and inadmissible in evidence. We believe that these conversations were admissible under the res gestae rule. The term "res gestae" refers to those circumstances which are admissible when illustrative of an act. "Whenever it becomes important to show, upon the trial of a cause, the occurrence of any fact or event, it is competent and proper also to show any accompanying act, declaration or exclamation which relates to or is explanatory of such fact or event." People v. Mulvaney, 286 Ill 114, at 117, 121 NE 229; O'Donnell v. Travelers Ins. Co., 332 Ill App 222, 74 NE2d 735. When an out-of-court statement assists in constituting the transaction, the statement is competent because it does not depend for its effect on the credit or credibility of the declarant, but derives its probative force from its close connection with the occurrence which it accompanies and tends to explain, and is admissible as original evidence and not objectionable as hearsay. Dunn v. Dunn, 241 Ill App 11. In the case of Lambe v. Manning, 171 Ill 612, 49 NE 509, the court considered the question of whether oral evidence could be admitted to explain a deed. The scrivener who drew the deed was called as a witness to state what the grantor had said in regard to the grantees under the deed

and as to the reason why he directed an additional writing to be fastened to the deed. The court said that the declarations were made at the time of the transaction, were explanatory of the transaction, and were admissible as a part of the res gestae. In the present case, plaintiff testified that on June 26, 1963, she made a check payable to defendant and delivered said check to Rusin. She testified to her conversations with Rusin so as to explain why the check was written and made payable to defendant. These declarations relate to the delivery of the check and are explanatory of this act. Therefore, Rusin's statements were made at the time of the transaction, were explanatory of this transaction, and were admissible as a part of the res gestae—delivery of the check to Rusin.

■■ When words play a part along with conduct in determining the total significance to be attached to an act, the uttered words are a verbal part of the act and admissible in evidence to explain the act. Without the words the act may be unexplainable. Therefore, the words are admissible in evidence to explain the significance of the act. Plaintiff testified that Rusin told her that Vacek & Company was the owner of the building and that Rusin was a real estate broker for defendant. The conversation took place on June 26, 1963, when Rusin approached plaintiff about the proposed deal. Their conversations were admissible to explain why the plaintiff made out a check for $5,000 payable to defendant. Her act in making out the check for $5,000 would have no significance in and of itself unless she were permitted to explain why she made the check out to defendant. Rusin's statement is admissible not to show that what Rusin said was true, but only that he said those things which resulted in her making the check payable to defendant. This is what is known as the res gestae or verbal act doctrine and is fully explained in Volume VI of Wigmore, 3rd Edition, paragraphs 1766 through 1786.

■■ The defendant also contends that plaintiff cannot prove that Rusin was an agent for the defendant by what Rusin said and did, and cites Sommerio v. Prudential Ins. Co. of America, 289 Ill App 520, 7 NE2d 631, for the rule that a supposed agent's statements and acts are incompetent by themselves to prove an agency relationship. We do not disagree with this statement, but an alleged agent's statements are relevant when it is shown that the alleged principal has consented or ratified such statements. The power of an agent can be proved only by tracing it to the source of his alleged authority, his principal. Sommerio v. Prudential, supra. In Wohl v. Yelen, 22 Ill App2d 455, at p 459, 161 NE2d 339, the court said:

> "An agency cannot be proved by the statements of the purported agent that he was the agent; but the conduct of the purported agent, what he did with respect to the subject matter of the transaction, his assumption of authority, and his actions in relation to his supposed principal, are all circumstances which may be put in evidence."

■ The defendant accepted the check payable to itself from the plaintiff. When the plaintiff met with defendant in July of 1963, defendant did nothing to negate plaintiff's assumption that Rusin was an agent for the defendant. In fact, plaintiff testified under cross-examination that Kezon had a heated telephone conversation with Rusin while plaintiff was talking with defendant and that he told her she could buy the apartment building if she would put up an additional $10,000. Therefore, it was reasonable for the court to infer from these actions of the defendant that he consented to and ratified the statements and acts of Rusin making him an agent of the defendant. In American Car & Foundry Co. v. Industrial Commission, 335 Ill 322, at 329, 167 NE 80, the court said:

85

"If one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as an agent of the latter, even though without any precedent whatever, if the person in whose name the act was performed subsequently ratified or adopted what has been done, then the ratification relates back and supplies the original authority to do the act."

The trial court found in the present case:

"FIRST: That the court has jurisdiction of the parties to this cause and the subject matter hereof.

"SECOND: That the plaintiff, SOPHIE GREBE, did, on or about the 26th day of June, 1963, issue her check in the sum of $5,000.00 payable to the order of Vacek and Company, which check was subsequently endorsed and deposited by Vacek and Company, defendant herein.

"THIRD: That said check was delivered by the plaintiff to one FRANK RUSIN who represented himself to be an agent of said defendant company.

"FOURTH: That the plaintiff was informed by said FRANK RUSIN that she would have an interest in the beneficial interest of a certain land trust with the American National Bank and Trust Company of Chicago, trustee under trust number 17136. That she would retain such interest until such time as certain refinancing arrangements could be made at which time her money, plus commission of $1,000.00 would be paid to her.

"FIFTH: That plaintiff has received neither the return of her $5,000.00 nor said commission of $1,000.00 nor an interest in the trust referred to herein.

"SIXTH: That the plaintiff has presented a prima facie case.

"SEVENTH: That the plaintiff should have recovery for $200.00 Master's fees paid by her.

"EIGHTH: That by her Complaint filed herein plaintiff has asked for relief in the alternative, to-wit, that plaintiff either have a Decree for Specific Performance or a money judgment against Vacek & Company;

"NOW, THEREFORE, IT IS ORDERED AND DECREED that plaintiff, SOPHIE GREBE, do have and recover of and from defendant, VACEK & COMPANY, a corporation, the sum of $6,200.00, and costs, and that execution issue therefor."

In Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518, our Supreme Court said at page 102:

"Finally, aside from the foregoing disposition of the legal points raised, the determination of this case depends largely upon the facts to be found in the record. In such situations the findings and judgment of the trial court, in chancery and nonjury cases, will not be disturbed by the reviewing court, if there is any evidence in the record to support such findings."

Examination of the record here shows there was ample evidence to support the trial court's judgment. We therefore affirm the judgment and decree of the trial court.

Judgment and decree affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.