City of Rockford, Illinois, a Municipal Corporation, Plaintiff-Appellant, v. John R. Floyd, Defendant-Appellee.

Gen. No. 68–69.

Second Judicial District.

December 30, 1968.

Rehearing denied February 7, 1969.

161

William E. Collins, Corporation Counsel, of Rockford, and Larry E. Ohlson, Assistant City Attorney, for appellant.

John R. Snively, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The City has appealed from judgments dismissing charges brought against the defendant under two ordinances of the City of Rockford. The defendant was issued an Illinois Uniform Traffic Ticket and Complaint charging him with the offense under local ordinance of driving while under the influence of intoxicating liquor. He was similarly charged with violation of the local ordinance which prohibited the operation of a motor vehicle in a careless manner. Pursuant to motion, the court below held that both ordinances were invalid as in conflict with

the State Statutes regulating traffic, and dismissed the charges.

We are called upon to decide the validity of the ordinances,[1] in the light of the State Statutes.[2]

---

[1] "Section 39–99. Careless Driving.

"Any person who drives any vehicle so as to endanger the safety of his own personal property or the safety of another person's property by a high degree of negligence in the operation of the vehicle is guilty of careless driving. (Ordinance of 4–12–37, section 1483F; Ordinance of 1–10–55.)"

"Section 39–100. Penalty for Violation of Section 39–99.

"Any person violating any of the provisions of Section 39–99 shall be fined not less than $10.00 nor more than $200.00 for each offense. (Ordinance of 1–10–55.)"

"Section 39–101. Driving under Influence of Alcohol or Narcotics.

"It shall be unlawful for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle.

"Any person violating any of the provisions of this section shall be fined not less than $100.00 nor more than $300.00 for each offense. (Ordinance of 10–29–51.)"

[2] Ill Rev Stats 1965, c 24, § 11–80–1.

"11–80–1. Laws governing. All provisions of this Code relating to the control of streets, alleys, sidewalks and all other public ways are subject to the provisions of the Uniform Act Regulating Traffic on Highways, approved July 9, 1935, as heretofore and hereafter amended, and the Illinois Highway Code, approved June 8, 1959, as heretofore and hereafter amended."

Ill Rev Stats 1965, c 95½, §§ 122, 123.

"122. § 25. Provisions of act uniform throughout state. The provisions of this Act shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Act, but such regulations shall not be effective until signs giving notice thereof are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate. As amended by act approved Aug 7, 1961. L 1961, p 2869.

The City argues that police regulations of a municipality may differ from those of the State upon the same subject if they are not inconsistent; and that whereas here the general policy is the same as to both the ordinance and the State Statute, but the ordinance attaches a lesser penalty for its violation, there is no repugnancy. The defendant urges that the Uniform Act Regulating Traffic on Highways has preempted the field leaving the City without authority to enact ordinances relating to driving under the influence of intoxicating liquor or careless driving.

---

"123. § 26. Powers of local authorities. (a) The provisions of this Act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

"1. Regulating the standing or parking of vehicles;

"2. Regulating traffic by means of police officers or traffic control signals;

"3. Regulating or prohibiting processions or assemblages on the highways;

"4. Designating particular highways as one way highways and requiring that all vehicles thereon be moved in one specific direction;

"5. Regulating the speed of vehicles in public parks subject to the limitations set forth in section 50 of this Act;

"6. Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersection;

"7. Restricting the use of highways as authorized in Article XVI of this Act;

"8. Regulating or prohibiting the turning of vehicles or specified types of vehicles at intersections.

"(b). No ordinance or regulation enacted under subdivisions (1), (4), (5), (6), (7) or (8) of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate.

". . . ."

 It is well settled that the powers of a munici-
pality over its streets and highways are those delegated
to it by the State; and that the State may assume com-
plete control of the regulation of streets and highways
and may deprive the municipalities of any power or au-
thority with respect thereto. Ayres v. City of Chicago,
239 Ill 237, 245, 87 NE 1073 (1909). The grant of au-
thority to municipalities relating to the control of streets
and of traffic thereon is expressly subject to the Uniform
Act Regulating Traffic on Highways (Ill Rev Stats 1965,
c 24, §§ 11–80–1, 11–80–20). Whether the present Uni-
form Act Regulating Traffic has preempted the field of
regulation as to driving while intoxicated and as to reck-
less driving so that no different regulation of these sub-
jects is within the power of a municipality requires an
interpretation of the Act with a view to its declared
purposes and against the backdrop of prior legislation
on the same subject.

The initial regulation of motor vehicles was by Act of
1907. The title of the 1907 law included the words "pro-
viding for . . . uniform rules regulating the use and
speed thereof . . . ." The Illinois Supreme Court in
Ayres v. City of Chicago (supra) stated that with ref-
erence to the Act of 1907 (page 245):

> "The legislature has by the Motor Vehicle Act taken
> the subject of the regulation of the speed and oper-
> ation of automobiles out of the hands of local author-
> ities and passed the Motor Vehicle law as a general,
> uniform regulation, applicable alike to all munici-
> palities of the State. The effect of this law manifest-
> ly is to abrogate all municipal ordinances designed to
> regulate the use of motor vehicles passed prior to the
> time such law went into force and to deprive such
> municipalities of the power to pass such regulating
> ordinances in the future. The necessity for such uni-
> form law was a matter for legislative determina-

165

tion, with which the courts have nothing to do. Clearly, the purpose of the legislature was to pass a new and complete law designed to take the place of all municipal ordinances or rules regulating the equipment and operation of motor vehicles."

In Ayres the Court had before it section 13 of the Act of 1907 which in substance provided that an owner would not be required to obtain any other license or permit to use the vehicle except that issued by the Secretary of State, nor be required to comply with other provisions or conditions as to the use of said motor vehicles except as provided in the Act. The majority of the Court, however, held that a "Wheel Tax" ordinance passed by the City of Chicago was valid as a proper exercise of the taxing power of the City and that it was not in conflict with the Uniform Act because it did not purport to regulate the manner of operating the vehicle or equipping it. By Act of 1911 the following provision was added to the 1907 Act:

"That nothing in this Act contained shall be construed as affecting (a) the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor-driven commercial vehicles and motor vehicles which are used within their limits for public hire, or for making and enforcing reasonable traffic and other regulations except as to rates of speed not inconsistent with the provisions hereof."

In People v. Sargent, 254 Ill 514, 517, 98 NE 959 (1912), the Court stated:

"A careful reading of the act of 1911 will show that the legislative intent is the same as expressed above in respect to the act of 1907. The manifest purpose of the legislature was to bring the whole subject of

166

regulating the use of motor vehicles under the control of the State."

However, in City of Chicago v. Walden W. Shaw Livery Co., 258 Ill 409, 416, 101 NE 588 (1913), the Court pointed out that the only question presented in the Sargent case was whether the Act was constitutional, and a decision of that question did not involve the question of the power of municipalities to make and enforce such reasonable regulations relating to motor vehicles as are not inconsistent with the regulations contained in said Act. The Court then held that the effect of the added proviso of the Act of 1911 qualified the general statements in both the Ayres case and the Sargent case, and it upheld the ordinance of the City of Chicago which prohibited the use of any motor vehicle in such manner as to permit the escape of any noxious smoke, etc. as not in conflict with the Motor Vehicle Act of 1911.

In Johnson v. Pendergast, 308 Ill 255, 262, 139 NE 407 (1923), the Supreme Court inferentially recognized that an ordinance of the City of Rockford providing that drivers in starting to turn from a standstill should give a signal in a certain way was to be given effect even though the 1911 Act covered that particular subject matter. The same result was reached directly in Pettit v. Weil-McLain Co., 252 Ill App 423, 426 (1929), involving a similar ordinance of the City of Chicago.

The same proviso referred to above as to the coordinate authority of the State and of municipalities remained in the various Motor Vehicle Acts passed subsequent to the 1911 Act, until the Act of 1935 was passed. In a case very similar to the one before us on the facts, the Village of Winnetka v. Sinnett, 272 Ill App 143, 146–148 (1933), the court upheld a drunken driving ordinance of the Village of Winnetka holding that the Motor Vehicle Act itself clearly indicated the intention of the General Assembly to leave the power of municipalities to make

traffic regulations in full force except as to speed, and that the fact that the ordinance prohibited an act already prohibited by the Statute providing a less penalty for violation of its terms did not affect the validity of the ordinance where the general policy under both enactments was the same.

A comprehensive revision of the Motor Vehicle Laws was enacted in 1935. The provisions dealing with the coordinate authority of municipalities were contained in sections 122 and 123 of that Act. The particular provision of section 122 has remained unchanged in the Act before us and the provision as to additional laws provided in section 123 has been altered but in a manner in which we do not deem material to the issue before us. (C 95½, §§ 122, 123, Ill Rev Stats 1965, supra.) It is basically to the effect that the provisions of the Act shall be applicable and uniform throughout the State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance, rule or regulation in conflict with its provisions unless expressly authorized in the Act. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of the Act. Section 123 provides in substance that the provisions of the Act shall not be deemed to prevent local authorities from regulating certain enumerated areas under their jurisdiction.

While the Uniform Act Regulating Traffic has considerably altered the language found in the previous act as to coordinate authority of the State and municipalities, we do not perceive that it has accomplished a basic change in legislative intention, nor is it the expression of an intention by the State to preempt the field to the exclusion of the municipality.

Section 122 distinguishes ordinances, rules and regulations *similar* to provisions of the Act from *addi-*

168

*tional* traffic regulations and provides that neither shall be in conflict with the Act. Thus it appears that if the State had meant to preempt the field, the words "in conflict" in the first sentence of section 122 would be superfluous as a municipality would be without power to pass any law in the area. Since the words must be given meaning, the logical conclusion is that municipalities are empowered to pass laws, as long as they are not in conflict with the State law, and therefore the State has not preempted the field.

Although this court did not deal directly with the preemption question in City of Highland Park v. Curtis, 83 Ill App2d 218, 226 NE2d 870 (1967), it assumed the law to be settled that municipalities may exercise police power concurrently with the State, and that those regulations may differ from those of the State on the same subject, if not inconsistent therewith. (Page 227.) Curtis involved a municipal ordinance on drunken driving.

The same assumption is found in People v. Reiner, 6 Ill 2d 337, 344, 129 NE2d 159 (1955), another case which involved a municipal drunken driving ordinance. In that case the Supreme Court decided a case on a different issue, but it alluded to section 32 of the Drivers License Act which provided in part that "whenever any person is convicted of any offense under this Act or the Uniform Act Regulating Traffic on Highways *or similar offenses under a municipal ordinance* . . . ." (Emphasis added.)

■ It would appear that the State law itself then recognizes that a municipal ordinance may provide for a violation for drunken driving. (Section 32 of the Drivers License Act is now chapter 95½, section 6–204–2, Ill Rev Stats 1965.)

■ With respect to the drunken driving ordinance of the City of Rockford before us, the defendant also argues that it is in direct conflict with the State law. He contends that the conflict is created by the fact that

169

the City ordinance does not contain any of the provisions relating to what constitutes driving under the influence of intoxicating liquor in regard to percentage of blood alcohol, nor does it tell how tests are to be administered, nor the result of the tests in regard to the presumption of intoxication. He also contends that a conflict is created because he may be convicted by only a preponderance of the evidence under the Rockford ordinance while he is entitled to the presumption of innocence and the proof beyond a reasonable doubt under the State law; that he may be charged under both laws and that therefore the burden upon him is greater and he is denied equal protection of the laws under the constitution. However, we believe that the answer to these contentions is that the City ordinance is less restrictive in its penalty than the State law, and that the burden of proof cannot be considered as a part of a penalty. The policy of both laws is the same. In City of Highland Park v. Curtis, supra, the history and the public policy of quasi-criminal actions for violation of municipal ordinances are thoroughly discussed. If defendant's contentions were upheld it would mean that practically all quasi-criminal actions would be in conflict with State laws, although nowhere has the Legislature clearly expressed such an intention. We believe that the arguments of the defendant as to the inequities of the situation should be properly directed to the Legislature.

 Much of what we have said with reference to the drunken driving ordinance would also be applicable to the careless driving ordinance. However, here the defendant has made the additional contention that the definition of the offense of "careless driving" is vague, indefinite and uncertain. The ordinance provides for violation where a "high degree of negligence" is involved, while the State Statute (c 95½, § 145, Ill Rev Stats 1965) provides for a violation where a "willful or wanton dis-

regard for safety" is involved. The meaning of the term "Willful and wanton" has evolved from a strict to a quite liberal definition in the decisions over the years. See Schneiderman v. Interstate Transit Lines, 394 Ill 569, 583, 69 NE2d 293 (1946) and Spivack v. Hara, 69 Ill App 2d 22, 26–27, 216 NE2d 173 (1966). However, it designates a standard of conduct which can be defined. A "high degree of negligence" is not such a term of art and we have found no decisions defining its meaning. Nor can negligence and willful and wanton misconduct be considered synonymous. Bartolucci v. Falleti, 382 Ill 168, 176, 46 NE2d 980 (1943); Chicago, R. I. & P. Ry. Co. v. Hamler, 215 Ill 525, 540, 74 NE 705 (1905). We find the Rockford ordinance as to careless driving void for vagueness and uncertainty. Lombardo Wine Co. v. Taylor, 407 Ill 454, 459, 460, 95 NE2d 607 (1950); Illinois Liquor Control Commission v. Chicago's Last Liquor Store, Inc., 403 Ill 578, 582, 583, 88 NE2d 15 (1949). Ordinances are construed under the same rules as statutes. Village of Park Forest v. Wojciechowski, 29 Ill2d 435, 437, 194 NE2d 346 (1963).

We, therefore, reverse and remand the cause on the charge of driving while under the influence of intoxicating liquors, but affirm the trial court's dismissal of the charge of careless driving.

Reversed and remanded in part, affirmed in part.

ABRAHAMSON and DAVIS, JJ., concur.

171