TILLIE PERZOVSKY, Individually and as Adm'rx of the Estate of Harry Perzovsky, a/k/a Harry Perzov, Plaintiff-Appellee, Cross-Appellant, v. CHICAGO TRANSIT AUTHORITY et al., Defendants-Appellants—(THE CITY OF CHICAGO, Defendant,Cross-Appellee).

(No. 57908; ▮▮▮▮▮▮▮

First District (1st Division)—November 4, 1974.

James G. O'Donohue, Jerome F. Dixon, and Paul Denver, all of Chicago, for appellants Chicago Transit Authority *et al.*

Theodore L. Forsberg, of Chicago, for cross-appellant Perzovsky.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Dennis James Stolfo, Assistant Corporation Counsel, of counsel), for cross-appellee City of Chicago.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Tillie Perzovsky brought suit below, both in her capacity as administratrix of her deceased husband's estate and individually, against the Chicago Transit Authority (hereinafter CTA) and the City of Chicago (hereinafter the City). She alleged in her complaint that both defendants had negligently caused the wrongful death of her 65-year-old husband. He had been found lying in the street severely injured, barely conscious, and unable to speak around 6 A.M., February 20, 1967, by a woman about to enter a CTA bus. He was lying between the right front wheel of the bus and a utility pole positioned on the curb. There were no eyewitnesses to the accident. Plaintiff contended below that deceased had been struck by the CTA bus and bounced into the utility pole maintained by the City. The jury found the CTA guilty and the City not guilty. Damages were awarded to plaintiff in the amounts of $75,000 in her capacity as administratrix and $1,440.50 in her capacity individually. The trial court entered judgment on the verdict but reduced her recovery as administratrix to $30,000.00 in accordance with the then existent limitation provision of the Injuries Act (Ill. Rev. Stat. 1967, ch. 70, par. 2).

The CTA has appealed, asking that we either reverse outright the judgment of the trial court or reverse and remand the cause for a new trial. Plaintiff, in addition to being the appellee, has cross-appealed against the defendant for procedural reasons. In the event that we should reverse the judgment of the trial court as to the CTA, she seeks that we also reverse as to the City and remand the cause for a new trial against both.

The CTA contends (1) that plaintiff failed to prove that deceased

exercised due care for his own safety; (2) that the trial court erred when it admitted testimony by an ambulance attendant respecting what deceased had told him about the accident on the way to the hospital; (3) that plaintiff failed to establish that the CTA was negligent; (4) that plaint'ff failed to show that the CTA driver's violation of a municipal ordinance (Municipal Code of Chicago 1958, ch. 27, par. 276(b) (c)) caused deceased's injuries or that the ordinance was enacted as a public safety measure; (5) that in any case the ordinance is unconstitutional; and (6) that the jury's verdict is against the manifest weight of the evidence. We hold otherwise and affirm the judgment of the trial court.

Two CTA bus drivers were involved in the suit below. Testimony at trial established that Orville Murray, the driver of what we shall call Bus A, pulled into the south-bound bus stop on Lincoln Avenue at the corner of Lincoln and Irving Park Road. His route had previously taken him east on Foster (5200 North) to Lincoln where he had turned south. He dropped off a few passengers and waited for the light at the intersection to turn green. When it did, he proceeded across Irving Park and down Lincoln. He stated that at no time did he see the deceased either as a passenger on his bus or walking alongside his bus or lying at the curb.

Constantine Desch, the driver of what we shall call Bus B, testified that his route on Lincoln had begun farther north than the other driver's route. Specifically, he had picked up some passengers at Lincoln and Berwyn (5300 North—one block north of Foster) and proceeded south on Lincoln. He arrived at Lincoln and Irving Park just behind bus A which was stopped in the bus stop. He pulled up a few feet behind bus A and stopped outside the bus stop. The front end of his bus was angled in toward the curb about 3 feet from it and the back end was approximately 6 feet away from the curb. He opened the doors of the bus. One lady got on. He did not know whether any passengers got off the bus. When the light changed, bus A moved out of the bus stop and he slowly moved his bus forward into the space previously occupied by bus A. He stopped about 3 feet from the curb. There he noticed a woman approaching the bus stop whom he recognized as a regular passenger. He waited for her to board the bus. When she got on, she told him that there was a man lying in the street. He got off the bus and noted that the man was lying between the right front wheel of the bus and the utility pole at the curb. An ambulance was summoned. It arrived in approximately 5 minutes. The man was taken to a hospital where he died within a few hours. The ambulance attendant testified over objection by the CTA that

deceased told him he had been struck by a "vehicle." Deceased did not specify what kind of vehicle struck him.

A pathologist for the Coroner testified that deceased suffered injuries and fractures caused by a compression force and roll.

The driver of bus B originally stated that the first time he saw the deceased that morning was when the woman told him about the man in the street and he got off the bus to check. He added that he had not seen anyone standing or lying in the street as he pulled into the space vacated by bus A. He also stated that he did not hit anyone. Subsequently, however, he admitted that on previous occasions the deceased had been a passenger on his bus and that he had picked up two men at Lincoln and Berwyn that morning one of whom might have been the deceased. He further admitted that he had previously testified at the coroner's inquest into the death of the deceased that deceased had been a passenger on his bus that morning. In addition, he admitted that deceased had been found that morning to be carrying a transfer from his bus.

Both drivers testified that they saw no snow packed along or on the curb. However, a police officer who investigated the accident testified that there was snow packed on the curb. Further, a witness for the CTA testified that U. S. Weather Bureau reports for the time of the accident listed that there was some snow still on the ground from a previous snowfall.

The woman who first noticed the deceased lying in the street testified that she saw him lying on the ground before either bus A or bus B arrived. She stated that bus A passed her without stopping and that she had to wait for bus B to pull up to her before she could tell the driver about the man.

Police officers testified that they were unable to find any eyewitnesses.

Plaintiff produced a witness who testified that he had known the deceased for about 25 years, that deceased was married, supported his family and was, in his opinion, a very careful man.

Plaintiff's theory of the case was that her husband had boarded bus B at Lincoln and Berwyn and alighted from the bus when it pulled up behind bus A at Lincoln and Irving Park. She maintained that he was unable to get to the sidewalk without climbing over some snow piled up on the curb which he was unable to do because of his age. As a result, he walked in the street alongside the bus toward the corner. He was struck by the bus and bounced into the utility pole when the bus pulled up to the bus stop at the intersection. She argued that the driver of bus B violated his duty of due care toward the decedent by neglecting to provide him with a safe place in which to alight from the bus. She also

cited a provision of the Municipal Code which prohibits bus drivers from discharging passengers anywhere except in a designated bus stop where the bus is roughly parallel to the curb with its right front wheel within 18-inches of the curb. She argued that the driver of bus B had violated this provision by his own admission and that in so doing had prima facie negligently placed the deceased in a position of great peril ultimately resulting in his death. Finally, she contended that the defendant City was negligent in that it had placed a utility pole too close to the curb.

The CTA maintained that plaintiff's proof failed to establish that either bus struck the deceased and that, in any case, the deceased was contributorily negligent for being in the street instead of on the sidewalk.

Defendant City contended that they had no notice of the danger of the utility pole and that therefore they were not liable.

The jury found the City and the driver of bus A not guilty. They found the driver of bus B guilty. This appeal followed.

## I

■■ Appellant's first contention is that the deceased was contributorily negligent as a matter of law, thereby barring the plaintiff from any recovery. The law in Illinois is that the question of contributory negligence becomes a question of law only when the evidence is so insufficient to establish plaintiff's due care that all reasonable minds must necessarily concur that plaintiff was contributorily negligent (*Lobravico v. Checker Taxi Inc.* (1967), 84 Ill.App.2d 20, 28, 228 N.E.2d 196). We hold that the evidence was insufficient and was a question of fact for the jury.

■■ Appellant maintains that deceased placed himself in a position of peril by being in the street instead of on the sidewalk. However, although there were no eyewitnesses, there is evidence tending to show that appllant may have placed the deceased in that position of peril. First, deceased probably was a passenger on appellant's bus B as reflected by the driver's admission that deceased may have been a passenger. There is also evidence that deceased disembarked from the bus when it first stopped behind bus A and opened its doors. Further, there was testimony by a police officer stating that there was snow packed on the curb. There was also testimony, admitted over appellant's objection, that deceased was a man of careful habits. With all this testimony, it is reasonable to conclude that deceased, a man of 65, may have decided not to risk injury by stepping over the snow and he instead chose to walk alongside the bus toward the corner where he would have had easy and safe access to the sidewalk. In view of this, we conclude that

the question of whether deceased exercised due care for his safety was a question of fact, properly left for the jury to consider.

Appellant contends, however, that it was error to admit testimony that deceased was a man of careful habits and that it was error to admit the alleged hearsay testimony of the ambulance attendant that deceased told him he had been struck by a vehicle. We disagree.

■■ First, the ambulance attendant's testimony shed little, if any, light on how the accident occurred since it did not specify what kind of vehicle struck him. Therefore, it did not prejudice the appellant. It would have been admissible in any case since it was part of the res gestae.

> "* * * The term 'res gestae' refers to those circumstances which are admissible when illustrative of an act. 'Whenever it becomes important to show, upon the trial of a cause, the occurrence of any fact or event, it is competent and proper also to show any accompanying act, declaration or exclamation which relates to or is explanatory of such fact or event.' People v. Mulvaney, 286 Ill. 114, at 117, 121 N.E. 229; O'Donnell v. Travelers Ins. Co., 332 Ill.App. 222, 74 N.E.2d 735. When an out-of-court statement assists in constituting the transaction, the statement is competent because it does not depend for its effect on the credit or credibility of the declarant, but derives its probative force from its close connection with the occurrence which it accompanies and tends to explain, and is admissible as original evidence and not objectionable as hearsay. Dunn v. Dunn, 241 Ill. App. 11. * * *." (Grebe v. Vacek & Co., Inc. (1968), 103 Ill.App.2d 79, 93, 243 N.E.2d 438).

Here, the deceased was severely injured and in a state of shock, barely able to speak. His statement was closely connected with the accident and tended to explain what occurred.

Second, other than deceased's said statement, there was no eyewitness testimony concerning the accident. Absent any direct and positive testimony from an eyewitness, it was proper to admit testimony concerning decedent's careful habits so that the jury might consider it (McElroy v. Force (1967), 38 Ill.2d 528, 534, 232 N.E.2d 708; Turnbull v. Porter (1965), 55 Ill.App.2d 374, 374(o)-374(p), 206 N.E.2d 97; Hardware State Bank v. Cotner (1973), 55 Ill.2d 240, 302 N.E.2d 257). Further, appellant's contention that the testimony respecting decedent's habits was not entitled to consideration because no specifics were enumerated to support it is without merit. Appellant relies on McIntruff v. Chicago Title & Trust Co. (1968), 102 Ill.App.2d 39, 243 N.E.2d 657. Such reliance is misplaced. In that case the janitor of a certain building who

was entrusted with the maintenance and care of that building fell down some stairs sustaining injuries which resulted in his death. Testimony that he was a man of careful habits was held to have little weight because he was well aware of the dangerous stairway and, in addition, he was found to have been a sick man who conceivably might have blacked out and fallen. The court concluded that evidence of his careful habits could be refuted by less than substantial evidence. The facts in the instant case are vastly different. We therefore hold that testimony concerning his careful habits was admissible as was the ambulance attendant's testimony and that the issue of deceased's exercise of due care was properly left to the jury to determine.

## II

Plaintiff's contention that the appellant was negligent was predicated on two separate theories. First, she maintained that appellant violated its duty of due care toward decedent and proximately caused his death when it neglected to provide him with a safe place to alight from the bus. This would constitute negligence (*Katamay v. Chicago Transit Authority* (1972), 53 Ill.2d 27, 289 N.E.2d 623). Second, she maintained that appellant violated a municipal ordinance enacted to protect public safety which proximately caused decedent's death and which constituted a prima facie case of negligence (*Gauchas v. Chicago Transit Authority* (1965), 57 Ill.App.2d 396, 206 N.E.2d 752). If the proof was successful under either of these theories, then appellant was negligent.

Appellant argues that although their bus driver violated a city ordinance the particular ordinance involved was not enacted as a safety measure and therefore violation of the ordinance did not constitute a prima facie case of negligence. In any case, they maintain that no action of their bus driver proximately caused decedent's death. These contentions are predicated on appellant's assumption that deceased stepped off the sidewalk into a moving bus or other vehicle and that if the bus did strike him, there was no way the bus driver could have anticipated decedent's act and prevented the accident. Whether appellant's assumption was what in fact occurred was a question properly left for the jury to decide.

We dealt with a similar question involving the same ordinance in *Gauchas v. CTA, supra.* The ordinance there and in this case is Municipal Code of Chicago 1958, ch. 27, par. 276(c), which states in pertinent parts:

"The driver of a bus shall enter a bus stop or passenger loading zone on a public street in such manner that the bus when stopped to load or unload passengers shall be in a position with the right

front wheel of such bus not further than eighteen inches from the curb and the bus approximately parallel to the curb so as not to unduly impede the movement of other vehicular traffic."

See also Municipal Code of Chicago 1958, ch. 27, par. 276(b), which provides:

"The driver of a bus shall not stop such vehicle upon any street at any place for the purpose of loading or unloading passengers other than at a designated bus stop, bus stand, passenger loading zone, or bus terminal except in case of an emergency."

In *Gauchas* we held, at page 403,

"\* \* \* A violation of an ordinance enacted as a public safety measure is prima facie evidence of negligence and creates a cause of action if it is the proximate cause of injury. Kapka v. Urbaszewski, 47 Ill.App.2d 321, 198 N.E.2d 569; Bell v. Willoughby Tower Bldg. Corp., 46 Ill.App.2d 45, 196 N.E.2d 487. The evidence in behalf of the plaintiffs was that the bus driver did not comply with the ordinance in that he opened the door and waved for the plaintiffs to come in while the bus was ten feet or so from the curb. This evidence was sufficient to take the case to the jury. It was for the jury to decide whether the defendant was negligent, whether the ordinance was violated and, if so, whether either the negligence or the violation of the ordinance was the proximate cause of the plaintiff's injuries."

In the instant case plaintiff's position is that decedent was let off the bus while the bus was stopped outside the area prescribed in the ordinance. Appellant does not deny that the bus stopped outside the area. Plaintiff then contended that the presence of snow on the curb prevented decedent from reaching the safety of the sidewalk causing him to walk alongside the bus where he was eventually struck by the bus as it pulled up to the bus stop. Whether this is what in fact occurred, whether it constituted negligence, whether the ordinance was violated, and whether the negligence or violation of the ordinance was the proximate cause of decedent's death, were all questions properly left to the jury. (*Gauchas, supra.*)

### III

Appellant also contends that the city ordinance is unconstitutional in that it attempts to regulate activity which has been pre-empted by the state legislature. Specifically, they contend that the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1967, ch. 95½, par. 98 et seq.), now superseded by the Illinois Vehicle Code, pre-empted the powers of cities to regulate motor vehicle traffic except in specific instances.

Section 25 of the Act (Ill. Rev. Stat. 1967, ch. 95½, par. 122) provided that,

"§ 25. Provisions of act uniform throughout state. The provisions of this Act shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Act, but such regulations shall not be effective until signs giving notice thereof are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate."

An express exception is section 26(a) (Ill. Rev. Stat. 1967, ch. 95½, par. 123(a) which provides,

"The provisions of this Act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

(1) Regulating the standing or parking of vehicles."

Appellant contends that the ordinance in question governs the loading and unloading of bus passengers and that it does not come within the exception which allows the City to regulate the standing and parking of motor vehicles. Therefore, appellant maintains that the City's power to enact such an ordinance has been pre-empted by the State and the ordinance, therefore, is unconstitutional. We disagree.

Appellant's argument was expressly rejected by this court in *Watson v. Chicago Transit Authority* (1973), 12 Ill.App.3d 684, 299 N.E.2d 58. We held there that the ordinance in question was properly authorized by the State. We said at page 689,

"The State may assume complete control over the regulation of streets and highways, thus depriving municipalities of any power or authority over them. (*City of Rockford v. Floyd* (1968), 104 Ill.App.2d 161, 243 N.E.2d 837.) However, our legislature has not chosen to do this. In Ill. Rev. Stat. 1965, ch. 24, par. 11—80—2, it is provided that: 'The corporate authorities of each municipality may regulate the use of the streets and other municipal property.' Such power includes the right to impose reasonable conditions and restrictions in order to promote the general welfare and prevent accidents. (*Yellow Cab Co. v. City of Chicago* (1947), 396 Ill. 388, 71 N.E.2d 652.) The City of Chicago used this authority in enacting the ordinance, which has been treated

by this court as a public safety measure. (*Gauchas v. Chicago Transit Authority* (1965), 57 Ill.App.2d 396, 206 N.E.2d 752.) The provisions of the ordinance are not in conflict with State law and the City did not exceed its authority in adopting them." We also held in *Watson* that the CTA had notice of the ordinance since they had incorporated the portion relating to the distance a bus may stop from the curb into their own rules. (Chicago Transit Authority Rule 103(a)). In addition, we held that the posted sign requirement giving notice of an ordinance not enacted by the State posited by section 25 (Ill. Rev. Stat. 1967, ch. 95½, par. 122), was satisfied by the bus-stop sign. There is therefore no merit to appellant's contention.

### IV

Appellant's last contention is that the jury's verdict is against the manifest weight of the evidence. We disagree.

■■ · As we previously noted, the evidence supports the conclusion that deceased was a passenger on bus B and that he alighted from the bus when it stopped behind bus A. Further, the bus driver admitted that he stopped the bus outside the area permitted by the ordinance. There was conflicting evidence that deceased was unable to get to the sidewalk safely because of the existence of snow on the curb. There was additional evidence that deceased was a man of careful habits. It is the function of the jury to weigh the evidence and determine the facts. They judge the credibility of the witnesses. Their findings in this case are supported by the evidence. We therefore hold that the jury's verdict is not against the manifest weight of the evidence.

The judgment of the trial court is affirmed.

Since we affirm, we need not consider the plaintiff's cross-appeal.

Affirmed.

BURKE and GOLDBERG, JJ., concur.