MINNIE LASSAI, Indiv. and as Special Adm'r of the Estate of Bernell Lassai, Deceased, *et al.*, Plaintiffs-Appellants, v. HOLY CROSS HOSPITAL, Defendant-Appellee.

First District (3rd Division)   No. 1—90—1354

Opinion filed December 27, 1991.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (Nancy G. Lischer, Diane Cernivivo, and Terrence K. McGrath, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:
Plaintiffs Minnie Lassai, individually and as special administrator of the estate of Bernell Lassai, deceased, Bernell Lassai, Raphael Lassai, and Alphonse J. Lassai brought this medical malpractice action against defendant Holy Cross Hospital following the death of Bernell Lassai. Plaintiffs now appeal from an order granting summary judgment in favor of defendant Holy Cross Hospital.

We reverse the judgment of the circuit court of Cook County.

While walking across the street on the evening of June 16, 1984, plaintiffs' decedent, Bernell Lassai, was hit by a motorcycle. Decedent's son, Bernell Lassai II (Lassai), was notified of his father's accident by telephone at approximately 9 p.m. When Lassai arrived, he found that his father had left the accident scene. Since his father claimed that he felt fine and was conscious and seemingly alert, Lassai took him home.

About 10 p.m., after returning home, Lassai took his father to the emergency room at defendant Holy Cross Hospital (Holy Cross). Decedent was conscious when he arrived at Holy Cross and a skull X ray, among other routine tests, was taken but no CT scan was performed. About 2 a.m., decedent was discharged from Holy Cross and taken home by Lassai.

A few hours later, about 8:30 a.m., decedent was found unconscious on the floor next to his bed. An ambulance took decedent to Little Company of Mary Hospital. Decedent never regained consciousness. On the fourth day of hospitalization, decedent was pronounced brain dead and medical care was terminated.

There is no dispute that the cause of death was a subdural hematoma and that a CT scan was the only available test to diagnose a subdural hematoma.

Plaintiffs brought an action against numerous defendants for the wrongful death of decedent. At issue in the present appeal are the two counts against Holy Cross in plaintiffs' second amended complaint. Plaintiffs alleged that Holy Cross was negligent in its treatment of decedent in a wrongful death action (count XII) and that this negligence caused pain and suffering to decedent (count XIII).

Holy Cross filed a motion for summary judgment and attached affidavits from its expert witnesses, Dr. Patrick Sullivan and Dr. Ruth Ramsey. In his affidavit, Dr. Sullivan stated that Holy Cross did not deviate from the standard of care in its treatment of decedent because there were no clinical signs of a subdural hematoma and the X ray reports revealed a normal skull. In her affidavit, Dr. Ramsey stated that she is a radiologist and that no skull fracture is demonstrated in the skull X rays taken at Holy Cross and at Little Company of Mary Hospital. Thus, Dr. Ramsey opined that Holy Cross did not deviate from the standard of care in failing to treat a fractured skull.

Thereafter, Lassai and Dr. Sullivan were deposed. In his deposition, Lassai did not testify that he told any medical personnel at Holy Cross that a witness to his father's accident had told Lassai his father had been unconscious after being struck by a motorcycle.

In his deposition, Dr. Sullivan testified that failure to perform a CT scan would be a deviation from the standard of care if the personnel at Holy Cross had been informed that decedent was unconscious at the scene of the accident.

Subsequently, Lassai filed an affidavit in which he stated that he was told by an occurrence witness that his father was unconscious following the accident. In turn, Lassai provided this information to a nurse at Holy Cross who questioned Lassai about his father's condition.

Following a hearing, the trial court granted summary judgment in favor of Holy Cross. Plaintiffs now appeal from that order.

Plaintiffs' sole theory is that decedent should have had a CT scan at Holy Cross. In turn, the absence of this test resulted in the failure to diagnose the subdural hematoma which caused decedent's death.

Plaintiffs argue that the trial court reached the wrong conclusion because it improperly disregarded the testimony given by Lassai in his affidavit and by Dr. Sullivan in his deposition. Plaintiffs assert that the disregarded testimony of Lassai and Dr. Sullivan establishes a deviation from the standard of care and thus raises a genuine issue of material fact as to preclude summary judgment. We agree.

Holy Cross responds by arguing that Lassai's affidavit is inadmissible on the grounds that it is based on hearsay and contradicts his

earlier deposition testimony. Holy Cross further contends that plaintiffs never offered any evidence to substantiate their allegations that Holy Cross deviated from the standard of care in not ordering a CT scan and that this deviation was a proximate cause of decedent's death.

Initially we note that plaintiffs contend that this case is controlled both on the facts and the law by *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 560 N.E.2d 586, which was decided after the summary judgment proceedings in the present case. In *Gatlin,* the supreme court held that the plaintiff had presented enough evidence of the defendant obstetrician's negligence to succeed in vacating the trial court's order for summary judgment in the defendant's favor. The evidence relied upon to vacate the summary judgment was the deposition testimony of a doctor who opined that the injuries complained of could have resulted from the actions of the defendant obstetrician. After his deposition, the deponent doctor submitted an affidavit which stated that his deposition testimony did not indicate that the obstetrician practiced medicine below the standard of care. The supreme court found that the doctor's subsequent affidavit did not alter his deposition and the trier of fact should merely consider the affidavit with all of the other evidence in the case. A circuit court cannot weigh the deposition against the affidavit because to do so admits an issue of material fact exists and thus precludes summary judgment.

The *Gatlin* court also reaffirmed the summary judgment standards articulated in the Code of Civil Procedure and in *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.

The Code of Civil Procedure provides that summary judgment can only be entered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The pleadings, depositions and affidavits must be construed most strictly against the moving party and most liberally in favor of the opponent. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.

At the summary judgment stage, a plaintiff is not required to prove its case but rather merely has the duty to present a factual basis which would arguably entitle it to judgment in its favor. (*Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 737, 458 N.E.2d 990.) A triable issue exists if fair-minded persons could draw more than one conclusion or inference from the facts, including one unfavorable to the moving party. (*Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d

789, 793-94, 450 N.E.2d 1286.) To survive a motion for summary judgment, the nonmovant must come forward with evidentiary material that establishes a genuine issue of fact. *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.

■ Our examination of the record reveals that plaintiffs submitted sufficient evidence to show that issues of material fact remain unresolved. Accordingly, in light of the established principles, we find that summary judgment is inappropriate.

Plaintiffs provided competent evidence that Lassai informed the personnel of Holy Cross of his father's unconscious state following the accident. In his affidavit, Lassai specifically attested that "I [Lassai] told her [a nurse] that my father was hit by a motorcycle, hit his head and I was told he was unconscious immediately following the accident. The nurse took this information and told us to wait outside."

We reject the arguments of Holy Cross claiming that this statement included in Lassai's affidavit is inadmissible hearsay and contradicts Lassai's deposition testimony. Lassai's statement to a nurse does not constitute hearsay as to Holy Cross. Clearly, all possible information regarding a patient's condition should be ascertained by medical personnel to administer proper care. (*Becherer v. Best* (1966), 74 Ill. App. 2d 174, 182, 219 N.E.2d 371 (a doctor must rely on information obtained from both the patient and outside sources).) Moreover, the testimony does not go to the truth or falsity of whether Lassai's father was unconscious but rather as to whether or not Lassai told the nurse of this fact. Lassai's alleged statement was a verbal act and not hearsay. *People v. Glover* (1988), 173 Ill. App. 3d 678, 527 N.E.2d 968; *Perzovsky v. Chicago Transit Authority* (1974), 23 Ill. App. 3d 896, 320 N.E.2d 433; *Grebe v. Vacek & Co.* (1968), 103 Ill. App. 2d 79, 243 N.E.2d 438.

Furthermore, the record reveals that the deposition testimony of Lassai does not contradict the statements of Lassai in his affidavit. Holy Cross maintains that Lassai's negative responses to broad questions as to whether or not he recalls anything else beyond the answers provided to the deposition questions constitute a judicial admission that he did not tell a Holy Cross nurse that his father had lost consciousness. Holy Cross cites to four instances where Lassai answered "no" to questions like "[a]s you sit here today, do you recall any other conversations or anything else that involved the care and treatment of your father at Holy Cross Hospital?" We find that a simple "no" response by Lassai does not rise to the level of an unequivocal admission so as to constitute a contradiction to his statements in his subsequent affidavit.

■ Plaintiffs also established that the failure to perform a CT scan when a patient had been previously unconscious was a deviation from the standard of care. Contrary to the assertion of Holy Cross, Dr. Sullivan expressly testified as to the deviation in his deposition, which states as follows:

"Q. [Plaintiffs' counsel]: Assume *** that the emergency room personnel were advised that [decedent] was unconscious at the scene of the accident, with all the findings that are stated in the emergency room. Do you have an opinion as to whether or not it then would have been a deviation from the standard of care not to perform a CAT scan?

A. [Dr. Sullivan]: I think at that point it would have been.

Q. [Plaintiffs' counsel]: A deviation?

A. [Dr. Sullivan]: A deviation.

* * *

Q. [Plaintiffs' counsel]: Assume also that the medical personnel at Holy Cross Hospital were told that [decedent] lost consciousness at the scene of his accident, although he regained it a couple of minutes after the accident. If that was the case do you have [an] opinion to a reasonable degree of medical certainty as to whether or not the personnel at Holy Cross Hospital deviated from the standard of care in their treatment of [decedent]?

A. [Dr. Sullivan]: [I]f that were the case, that would be a deviation."

We find that this testimony sufficiently supports plaintiffs' allegation that Holy Cross deviated from the standard of care so as to survive summary judgment.

Next, Holy Cross claims that plaintiffs failed to present evidence that the alleged deviation from the standard of care was the proximate cause of decedent's death. In reply, plaintiffs assert that there was no motion or affidavit advancing the absence of proximate cause as a matter of law which would have placed a burden on them to show that a question of fact existed as to the issue of proximate cause.

A party opposing summary judgment may rely upon reasonable inferences drawn from the materials considered on the motion in the determination of whether a genuine issue of material fact exists. (*Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099; *Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 404 N.E.2d 869.) Summary judgment is a drastic remedy which should only be allowed when the right of the moving party is clear and free

from doubt. (*Gatlin*, 137 Ill. 2d 284, 560 N.E.2d 586; *Purtill*, 111 Ill. 2d 229, 489 N.E.2d 867.) In addition, proximate cause is ordinarily a jury question. *Duffy*, 92 Ill. App. 3d 193, 415 N.E.2d 1099.

We believe that proximate cause can be inferred from the facts. The undisputed facts establish that the decedent suffered a head injury. The emergency room personnel at Holy Cross treated decedent but did not perform a CT scan, which was the only available test to diagnose a subdural hematoma. A few hours after his discharge from Holy Cross, the decedent fell into a coma and died from a subdural hematoma. Given these undisputed facts, we find that summary judgment is precluded because a question of fact exists as to the proximate cause of death.

For the foregoing reasons, the trial court's order granting Holy Cross' summary judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CERDA, P.J., and RIZZI, J., concur.