MARY M. MISKUNAS, Plaintiff-Appellant, *v.* THE CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (4th Division)   No. 61560

Opinion filed September 8, 1976.

BURMAN, J., dissenting.

Powers McGuire and Francis X. Riley, both of Chicago, for appellant.

Sal M. Bianchi and Daniel R. Fusco, both of Chicago, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff appeals from a judgment of the Circuit Court of Cook County entered on September 13, 1974, sustaining the defendant's motion to dismiss after the close of the plaintiff's case.

The issue on appeal is whether the plaintiff failed to establish a prima facie case of negligence such that no contrary verdict based upon that evidence could ever stand.

On January 6, 1971, the plaintiff, then aged 38, rode a Chicago Transit Authority bus home from work and got off at the northeast corner of Albany and 39th Streets in the City of Chicago. She was wearing boots with low, flat heels, and she was carrying a handbag and a plastic bag with her shoes in it.

It was dark and very cold and there was a covering of snow on the

ground. The Local Climatological Data bulletin issued by the National Weather Service shows that on January 3, 1971, there had been 7.1 inches of snow, and on January 4, 1971, there was a trace of snow. The bulletin indicates the temperature fell from a maximum of 43° on January 3 to a maximum of 8° on January 6. Finally, the bulletin indicates that on the morning of January 6, there were two inches of snow on the ground. The plaintiff testified that a light snow covered the streets and sidewalks, but she did not recall that it was piled up.

The bus stopped in a crosswalk parallel to the curb about three feet from the curb. The plaintiff, who was the only passenger to get off the bus at Albany, had her handbag and shopping bag in her left hand and held onto the rail with her right hand. She testified her injury occurred as follows: "I know I was holding onto that rail just going down slowly, and as my foot had touched what I had seen of the snow area, after stepping down carefully, I slipped very quickly, but I was still holding onto the rail as much as I could with my right hand. And then I just lost control and slipped right off and fell." She testified she couldn't see the ice she stepped on, until she stepped down.

She was assisted by passersby who helped her to her home from which she was taken to the hospital. It was determined she had broken her leg, and she was in a cast for five months.

The driver of the bus made no attempt to assist the plaintiff after she fell, but gave his name and number on a card when one of the passersby urged her to ask for it.

Benjamin Fenger, a registered land surveyor, testified he surveyed the corner where the injury occurred and determined the drop in elevation from the center line to the curb was 12 inches, and the drop from a place 8 feet from the curb to the curb was 9 inches.

The plaintiff alleged in her amended complaint that the defendant had been negligent by operating the bus in a careless manner, by bringing the bus to a stop at a place where alighting could result in injury, by bringing the bus to a stop with the right front wheel of the bus more than 18 inches from the curb, by failing to warn the plaintiff of the dangerous condition of snow and ice, and by failing to assist the plaintiff to a point of safety.

At the time of the injury section 276 of chapter 27 of the Municipal Code of the City of Chicago stated as follows:

"(c) The driver of a bus shall enter a bus stop or passenger loading zone on a public street in such a manner that the bus when stopped to load or unload passengers shall be in a position with the right front wheel of such bus not further than eighteen inches from the curb and the bus approximately parallel to the curb so as not to unduly impede the movement of other vehicular traffic."

Chicago Transit Authority Rule 103-A contained a similar provision:

"The operator of a bus shall enter a bus stop zone in such a manner that when standing to load or discharge passengers, the right front wheel shall be not more than eighteen (18) inches from the curb to allow the free movement of other vehicular traffic."

At the close of the plaintiff's evidence the trial court ruled in favor of the defendant and against the plaintiff on defendant's motion for a directed verdict, on the basis that the plaintiff had not met the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.

There is some confusion in the record in that the court allowed a defense witness to testify out of turn before the plaintiff rested. The plaintiff was waiting for a doctor to testify, and to save time the court allowed Leonard Losoya, 13 years old, to testify for the defense.

By agreement of the attorneys the defendant was allowed to move for a directed verdict on liability after Losoya's testimony. This necessarily precluded the defense testimony from being considered by the court, and we cannot consider it, as it was not part of the plaintiff's case. This was recognized on appeal as neither side discussed Losoya's testimony in their briefs.

A review of the record indicates the court based its judgment on the belief the defendant owed no duty to the plaintiff once she stepped off the bus, and on the belief the bus driver had complied with all his duties in that he was not able to get within 18 inches of the curb "because of the ice."

■■ A common carrier owes the highest degree of care to a passenger, and that duty extends until the passenger has been given an opportunity to alight in a safe place. That question was most recently determined in the case of *Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 29, where the Illinois Supreme Court stated, "The passenger to whom the carrier owes the duty to exercise the highest degree of care is one who is in the act of boarding, is upon, or is in the act of alighting from, the carrier's vehicle. (See Illinois Pattern Jury Instructions—Civil (2d ed. 1971), No. 100.09.)"

In the case at bar the plaintiff alleged the defendant was guilty of common law negligence by failing to stop at a place which was safe for the plaintiff to alight, and alleged the defendant violated a municipal ordinance enacted to protect the public safety by failing to stop within 18 inches of the curb.

■■ It is clear that proof establishing a failure to provide a safe place to alight constitutes negligence under the standard set forth in *Katamay*. It is also well established under the law of Illinois that whether an ordinance enacted for the public safety was violated, and whether the negligence or violation of the ordinance was the proximate cause of the injury were properly questions for the jury. *Gauchas v. Chicago Transit Authority*

(1965), 57 Ill. App. 2d 396; *Perzovsky v. Chicago Transit Authority* (1974), 23 Ill. App. 3d 896.

■■ The evidence established at trial was the plaintiff was injured while alighting from a Chicago Transit Authority bus which was stopped in a crosswalk about three feet from the curb. The street where she alighted was icy, and it dropped off sharply toward the curb. Contrary to the conclusion of the trial judge, the plaintiff stated she remembered no pile-up of snow which would have prevented the driver from discharging his duty to come within 18 inches of the curb, and the National Weather Service bulletin indicates there were only two inches of snow and ice on the ground on the morning of January 6, 1971. We must conclude the evidence adduced at trial on behalf of the plaintiff established a prima facie case, and it was error for the court to sustain the defendant's motion for a directed verdict.

For these reasons, the judgment of the Circuit Court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded for new trial.

JOHNSON, P. J., concurs.

Mr. JUSTICE BURMAN, dissenting:
I would affirm the trial court's judgment for the defendant. The record clearly establishes that defendant's bus came to a complete stop at the crosswalk and when the doors opened, the plaintiff alighted carrying a purse and a bundle in her left hand. She did not slip and fall on the steps of the bus. A fair reading of the record indicates that the court, who heard the evidence without a jury, found for the defendant on the merits.

At the trial, conflicting testimony was elicited from the plaintiff and Leonard Losoya, a 13-year-old individual who witnessed the incident, concerning (1) the physical condition of the sidewalk and the street where the defendant's bus stopped to let the plaintiff alight and (2) whether the plaintiff was in contact with the bus at the time she slipped and fell. Moreover, the plaintiff testified that at the time of the incident, the defendant's bus, which was situated approximately three feet from the curb, was stationary and its steps were clear and without defect. Upon the conclusion of the plaintiff's case-in-chief, the defendant moved for a directed finding which was granted.

Before delving into the pertinent legal tenets governing the case at bar, some prefatory comments regarding my colleagues' analysis of the matter at hand are essential. While the majority insists that there is some confusion in the record whereby the trial judge allowed defense witness Leonard Losoya, to testify prior to the plaintiff resting her case-in-chief, I

am of the opinion that there was no perplexity in the transpiration of events at trial. As revealed in the record, counsel for the plaintiff elicited testimony from (1) a records librarian from the hospital where the plaintiff was X-rayed, (2) his client, and (3) a registered land surveyor. Thereafter, the trial judge and counsel for both sides engaged in the following colloquy:

"MR. Mc GUIRE [Plaintiff's Attorney]: Your Honor, other than medical testimony, which for reasons beyond my control is not available this afternoon, other than that, I would rest.

THE COURT: You want to recess your case until—subject to letting the defendant going ahead, if he so desired, and to reopen your case after when you get the medical doctor here?

MR. GERRARD [Defense Attorney]: The understanding being that it is only medical evidence. I don't have any objection to proceeding.

THE COURT: You may so recess at this time and you may present your case.

And you will have an opportunity to present your medical evidence.

MR. Mc GUIRE: Thank you."

Subsequent to the above instance in which counsel for the plaintiff indicated that his client had rested her case, defense counsel called Leonard Losoya. At the conclusion of the respective examinations of such witness, the following discussion between the trial judge and both counsels ensued:

"MR. Mc GUIRE: And, Judge, so that everybody understands my position, I already indicated that for all practical purposes— well, I said that before. There is no sense in reiterating this so that—

THE COURT: You got to put on medical testimony.

MR. Mc GUIRE: Right, sir. Other than that, I have rested.

THE COURT: You have rested.

MR. Mc GUIRE: So that maybe now we can have a motion at the close of the plaintiff's case, because certainly the medical is not going to the trier of the fact.

THE COURT: Are you inviting the defense to make a motion for a directed finding?

The doctor's testimony he says will be substantially the same thing as the plaintiff's testimony was except that he may describe the treatment he gave her.

MR. Mc GUIRE: Yes, and the prognosis and the history that was given by the plaintiff to him.

As I said, it would be prognosis and as to permanency.

THE COURT: And, you are suggesting that the defendant make a motion at this time?

MR. Mc GUIRE: Let me put it this way, if Mr. Gerrard makes a motion—

THE COURT: You have no objection.

MR. GERRARD: I never make the motion—

MR. Mc GUIRE: Off the record."

The trial judge then proceeded to hear the respective arguments proffered by both attorneys before he granted the motion for a directed finding. Thus, it is apparent that not only did counsel for the plaintiff rest before the trial judge allowed Leonard Losoya to testify, but it was counsel for the plaintiff who, in an apparent attempt to prevent the incurrence of additional expenses for medical testimony which would have no bearing as to whether the plaintiff made a prima facie case should the trial judge hold for the defendant, suggested that defense counsel move for a directed finding.

I further believe that under the circumstances here, even though Leonard Losoya's testimony was not part of the plaintiff's case-in-chief, both my colleagues and the trial court were not precluded from considering his account of what transpired on January 6, 1971. In the first place, I am not aware of any legal precept that prevents either a trial court or a reviewing court from considering such testimony in resolving a defendant's motion for a judgment at the close of the plaintiff's evidence. On the contrary, as the tenets subsequently cited will show it is incumbent upon the trial judge to evaluate the evidence in terms of the credibility of *all* the witnesses as well as the weight and quality of *all* the testimony elicited. Moreover, in ascertaining whether the trial court's ruling should be disturbed on review as being against the manifest weight of the evidence, the onus is on a reviewing court to make its own examination of the *entire* record before reaching a conclusion. Further, even assuming the majority's characterization of the defendant's motion, namely, one for a directed verdict, was correct, it must be remembered that in determining whether such motion should be granted, all the evidence presented must be considered. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 502, 229 N.E.2d 504, 509.

Besides the prevailing legal tenets being inapposite to the posture adopted by the majority, the facts at bar do not evince that the trial court solely based his decision on the testimony of Leonard Losoya. Rather, the trial judge indicated that "based upon what I have seen here, I am of the opinion that * * * the case would not stand if I denied the motion, and it went up to the Appellate Court." Considering such statement, it would appear that the trial judge granted the defendant's motion for a directed finding only after he analyzed and weighed the testimony of all the witnesses who appeared before him. Hence, the mere facts that (1) Leonard Losoya was called to testify for the defense and (2) neither side

mentioned his testimony in their brief do not impede a consideration of such evidence by either the trial court or this reviewing body.

It is well settled in Illinois that in ruling on a defendant's motion for a judgment at the close of the plaintiff's evidence in a trial without a jury, a trial judge is required to evaluate the evidence in terms of (1) the credibility of all the witnesses, (2) the reasonable inferences to be drawn from the evidence, and, in general, (3) the weight and quality of the testimony elicited. (*E.g., Rey v. Rey*, 23 Ill. App. 3d 274, 276, 319 N.E.2d 105, 107; *Gray v. Schottmiller*, 18 Ill. App. 3d 812, 815, 310 N.E.2d 750, 753.) Once the trial judge, subsequent to considering the above factors, makes a final determination and enters a judgment for the defendant, such finding will not be disturbed on appeal unless the reviewing court ascertains from its own examination of the record that the ruling was against the manifest weight of the evidence. (*E.g., People ex rel. Scott v. Convenient Food Mart, Inc.*, 21 Ill. App. 3d 97, 110, 315 N.E.2d 124, 135; *De Bello v. Checker Taxi Co.*, 8 Ill. App. 3d 401, 404, 290 N.E.2d 367, 369.) In reaching such a determination that the trial court's decision was contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident or the finding must be palpably erroneous and wholly unwarranted. (See *e.g., Costello v. Chicago Transit Authority*, 40 Ill. App. 3d 461, 352 N.E.2d 417, *Walters v. Taylor*, 36 Ill. App. 3d 934, 939, 344 N.E.2d 765, 769.

Applying these legal precepts to the analysis utilized by the majority, it is apparent that there is no merit in their decision to reverse and remand this case for a new trial. Although I do not in theory controvert the tenets enunciated in the decisions which my colleagues adopt to buttress their position, I believe that such decisions do not mandate a reversal of the finding of the trial court. In the first place, the majority's reliance on the decision in *Katamay v. Chicago Transit Authority*, 53 Ill. 2d 27, 289 N.E.2d 623, is misplaced since such opinion actually warrants an affirmance of the finding of the trial judge. In *Katamay*, judgment was entered upon a jury verdict in the amount of $27,500 in favor of plaintiff. On appeal, the appellate court reversed the judgment and remanded the cause to the circuit court with directions to enter judgment for defendant notwithstanding the verdict in favor of plaintiff. In doing so, the appellate court held that as a matter of law, plaintiff was not a passenger at the time of her injury, and defendant did not owe her the highest degree of care. In reversing the appellate court, the Supreme Court of Illinois held that whether an individual is considered a passenger to whom a common carrier owes the duty to exercise the highest degree of care is a question for the trier of fact and not to be resolved as a matter of law. (53 Ill. 2d 27, 32, 289 N.E.2d 623, 626.) While my colleagues cite this decision for the tenet it espouses, they seem to overlook the latter aspect of this precept,

namely, that the fact-finder makes the determination as to whether a person is considered a passenger. Consistent with such dictate, the trial judge at bar, sitting as trier of fact, heard and analyzed the evidence regarding whether (1) the defendant's bus was precluded from stopping within 18 inches of the curb because the snow was piled up on the street by the curb; (2) the defendant created or had any control over the removal of the ice and snow that existed where the plaintiff slipped and fell; and (3) the plaintiff had alighted from the bus and placed both feet on the street when she slipped and fell. It was only after the plaintiff had presented her case-in-chief concerning such issues and the defendant had elicited testimony from Leonard Losoya to maintain the issues in its behalf that the trial judge entered a finding for the defendant on the basis that the bus driver had complied with all of the duties required of him under the circumstances. In light of such litigious efforts, I believe that the instant case comported with the *Katamay* decision so as to merit an affirmance of the trial court's finding.

I further am of the opinion that the majority's reliance on the decisions in *Perzovsky v. Chicago Transit Authority*, 23 Ill. App. 3d 896, 320 N.E.2d 433, and *Gauchas v. Chicago Transit Authority*, 57 Ill. App. 2d 396, 206 N.E.2d 752, do not warrant the reversal and remand of this cause for a new trial. While my colleagues cite these cases for the proposition that it is up to the trier of fact to determine whether the defendant was negligent, whether an ordinance enacted for public safety was violated and if so, whether either the negligence or the violation of such ordinance was the proximate cause of the plaintiff's injury (23 Ill. App. 3d 896, 904, 320 N.E.2d 433, 439; 57 Ill. App. 2d 396, 403, 206 N.E.2d 752, 786), they apparently failed to adhere to such precept when deciding this matter on review. As previously mentioned and in contradistinction to the factual situation in *Gauchas* wherein the trial court resolved such issues as a matter of law by granting a directed verdict, the instant record reveals that the trial judge, sitting as trier of fact, rendered a finding only subsequent to the completion of the plaintiff's case-in-chief and the examinations of Leonard Losoya. Moreover, before rendering such finding, the trial judge extensively addressed himself to whether the bus driver had violated the municipal ordinance (Chicago, Ill., Municipal Code, ch. 27, §276(c)(1958)), which he felt was designed so that a "person can * * * [take] a normal step to reach the curb." Thus, it would appear that whether the instant ordinance had been violated or was the proximate cause of the plaintiff's injury was properly reserved for the trier of fact, who responded in the negative to such questions subsequent to hearing and evaluating the evidence surrounding this controversy.

Besides the inapplicability of the edicts relied on by the majority, the finding of the trial judge was not contrary to the manifest weight of the

evidence. While the majority places emphasis on (1) the plaintiff's testimony that she remembered no pile-up of snow which would have prevented the bus driver from complying with the pertinent municipal ordinance and (2) the National Weather Service bulletin indicated there was two inches of snow and ice on the ground on the morning of January 6, 1971, the record also evinces that the trial judge had also heard the testimony of Leonard Losoya that the defendant's bus could not stop within 18 inches of the curb because there was approximately two feet of snow piled up on the street by the curb. Moreover, my colleagues ignore that the record is devoid of any evidence that the place where the bus stopped and the plaintiff alighted was entirely different from any of the surrounding area. On the contrary, Leonard Losoya related on direct examination that the two foot pile-up of snow extended all the way down the street. Also, the plaintiff indicated on cross-examination that the patch of snow covering the ice which she slipped on was not relegated to the locale where she alighted from the bus. Rather, there were patches of snow situated throughout the entire area which, according to Leonard Losoya, precluded one from seeing the sidewalk.

Combining the above testimony with such uncontroverted evidence that (1) the lighting conditions where the bus stopped were excellent, (2) the steps of the bus were not covered with ice or snow nor were they defective in any manner and (3) the plaintiff slipped only after she had alighted from the bus, I believe that the finding of the trial judge was not palpably erroneous, and wholly unwarranted. Although the evidence presented by both sides was, in some instances, contradictory, it must be remembered that the trial judge, as trier of fact, was in a better position than this reviewing body to (1) observe the conduct of the witnesses while they testified, (2) to determine their credibility, and (3) to weigh the evidence and the reasonable inference therefrom before making a determination. (*E.g., Schulenburg v. Signatrol, Inc.*, 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626; *City of Chicago v. Commonwealth Edison Co.*, 24 Ill. App. 3d 624, 631, 321 N.E.2d 412, 418.) Besides evaluating the demeanor of the witnesses at trial as well as the plausibility of their respective testimony, the record also demonstrated that the trial judge was extremely patient with both sides and afforded them every opportunity to substantiate or buttress their position before he rendered his decision. Under these circumstances, I believe that the trial court's finding was not contrary to the manifest weight of the evidence and therefore should not have been disturbed.