MARIANNA KRYWIN, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (4th Division)   No. 1—08—0377

Opinion filed May 21, 2009.—Rehearing denied June 24, 2009.

Eugene Munin, Kent S. Ray, and Stephen L. Wood, all of Chicago Transit Authority, of Chicago, for appellant.

Gordon & Centrachio, LLC, of Chicago (Lawrence G. Gordon and Joseph G. Ryan, of counsel), for appellee.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

The defendant, Chicago Transit Authority (the CTA), appeals the jury verdict in favor of plaintiff, Marianna Krywin, on her complaint for negligence and wilful and wanton conduct. The primary issue on appeal is whether the CTA breached its duty to provide plaintiff with a safe place to alight when it stopped its train in front of a natural accumulation of snow and ice, upon which plaintiff fell as she was exiting the train. We reverse.

At trial, Darren Hill testified that he has been a security controller with the CTA for 16 years. His job is to take calls from CTA person-

nel regarding accidents, injuries and defective equipment and make written reports thereof. On January 13, 2005, he received a call from CTA customer service agent Theresa Williams regarding plaintiff's fall on the southbound Sheridan Road platform of the CTA's Red Line train. Mr. Hill recorded the following information in a document entitled "Unusual Occurrence Report":

"Mrs. M. Krywin, age 60, injured her left leg after she slipped and fell on the southbound platform while alighting Run 809. Ms. Krywin was transported to Illinois Masonic Hospital by Engine Number 78 for injuries to her left leg. Icy conditions existed on the platform at the time of the incident."

Anthony Morales testified that he has been a rail maintenance worker at the CTA for 15 years. His duties include removing snow and ice from the elevated platforms, and then spreading sand on the platforms once the snow and ice are removed. In January 2005, he was assigned to the Sheridan Road and Addison Street stations of the CTA's Red Line train. There is a small canopy covering less than half of the southbound Sheridan Road platform. Mr. Morales testified that he does not remember removing any snow or ice from the southbound Sheridan Road platform on January 11, 12 or 13 of 2005.

Ruben Bonner testified that he has been a rapid transit operator since 1998. At approximately 9:50 a.m. on January 13, 2005, he operated a southbound train that entered the Sheridan Road station. After the train's doors opened, he noticed the plaintiff on the platform on her hands and knees near the rear of the train. Mr. Bonner testified that the area on the platform where the plaintiff fell was icy.

Patricia Majors testified that in January 2005, she was a senior at DePaul University who used the CTA's Red Line train multiple times a day, each time entering at the southbound Sheridan Road platform. At approximately 10 a.m. on January 13, 2005, Ms. Majors was on the southbound Sheridan Road platform, which she described as being "very icy." The train approached and the doors opened. Ms. Majors testified that she saw plaintiff step off the train and fall on the ice. Ms. Majors further testified in pertinent part:

"Q. But it was icy on the platform; is that correct?

A. Yes, it was.

Q. All right. Was there slush under the ice, or was the ice directly on top of the train platform?

A. Only ice on the platform.

Q. And that was directly on top of the wood platform?

A. Correct.

Q. And how big of an area was covered with ice on the Sheridan Road southbound train platform, on [the day of the accident, and the two preceding days]?

A. All of it, except what was covered by the canopy, the small canopy.

Q. You didn't see anyone spread sand or salt on the platform on any of those three days?

A. I did not.

\*\*\*

Q. Was the vicinity in which Marianna was stepping off of the train, was that area, the immediate area surrounding the door at which she was coming out, was it covered by ice?

A. Yes, it was.

Q. Was there any room for her to step around the ice in that area?

A. No.

Q. Did you see any sand on that platform in-between the ice and the platform?

A. No, I did not.

Q. Did you see any sand on top of the ice?

A. No, I did not."

Plaintiff testified that she was born in Poland and had lived in Chicago for 22 years. At the time of trial, she was 76 years old. On January 13, 2005, plaintiff exited her home on Paulina and went to the train station at Howard. She entered the southbound train to Sheridan. Plaintiff testified that upon exiting the train at the Sheridan platform, she "put one of [her] legs down and then the other one and then there was snow and slippery and [she] went backwards." Plaintiff further testified that she "made one step with [her] right leg and [she] stepped into the snow and then [she] stepped with [her] left leg and then \*\*\* [she] had fallen backwards and then [she] was screaming from pain." Plaintiff stated she fell onto the platform and that the "snow was not clean whatsoever of the platform."

Plaintiff testified that paramedics came to the scene, put her on a stretcher, and transported her to the emergency room. Eventually, she was transferred to Lincoln Park Hospital, where she underwent surgery on her left leg. Plaintiff testified to her pain and suffering as well as her disability and scarring.

Doctor Daniel Ivankovich testified that he is an orthopedic surgeon who evaluated the plaintiff at the emergency room of Thorek Hospital on January 13, 2005. Plaintiff related to Doctor Ivankovich that she had slipped and fallen on ice. Doctor Ivankovich diagnosed her with a pilon fracture of her left tibia that also included her left fibula. Doctor Ivankovich testified that the pilon fracture "more than likely meant that she planted her foot, rotated and the bone gave. The force was sufficient that the ligaments didn't tear, but the actual bone fractured."

Doctor Ivankovich performed surgery on plaintiff on January 20, 2005. Plaintiff was hospitalized continuously from January 13, 2005, until February 10, 2005. Doctor Ivankovich testified that the injury plaintiff sustained was the direct result of her fall on January 13, 2005.

Following all the evidence, the case proceeded to the jury on two counts of the plaintiff's second amended complaint. Under count I, the sole issue submitted to the jury was plaintiff's claim that the CTA was negligent for failing to provide a safe place to alight from the train. Under count II, the sole issue submitted to the jury was plaintiff's claim that the CTA's failure to provide a safe place to alight from the train was wilful and wanton.

The jury returned a general verdict in favor of plaintiff and against the CTA in the amount of $372,141. The CTA filed this timely appeal following the denial of its posttrial motions.

On appeal, the CTA contends the trial court erred by denying its motion for a directed verdict. A motion for a directed verdict is properly granted when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Review is *de novo. Lisowski v. MacNeal Memorial Hospital Ass'n*, 381 Ill. App. 3d 275, 289 (2008).

The CTA contends the trial court should have directed a verdict in its favor on plaintiff's negligence and wilful and wanton claims because the plaintiff failed to prove that it owed her any duty to remove the natural accumulation of snow and ice on its platform. In both an action for negligence and an action for wilful and wanton misconduct, the plaintiff must establish an existence of a duty, breach of that duty, and an injury proximately resulting from the breach. See *Serritos v. Chicago Transit Authority*, 153 Ill. App. 3d 265, 268-69 (1987); *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 781 (2006).

■ A common carrier owes a duty to its passengers to exercise the highest degree of care consistent with the practical operation of its conveyances. *Sheffer v. Springfield Airport Authority*, 261 Ill. App. 3d 151, 154 (1994). This duty arises "due to the unique control it possesses over its passengers' safety. *** [Citation.] That duty continues until the passenger has left the carrier and the place where passengers are discharged. The carrier is bound to furnish the passenger an opportunity to safely alight from the conveyance and reach a place of safety." *Sheffer*, 261 Ill. App. 3d at 154.

In the present case, the CTA drove its train into a station and discharged its passenger, the plaintiff, onto a platform covered in a

natural accumulation of snow and ice upon which she fell. The issue is whether, in so doing, the CTA breached its duty to provide plaintiff with the opportunity to safely alight from the train and reach a place of safety.

The appellate court has addressed similar issues in *Serritos*, 153 Ill. App. 3d 265, *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center*, 187 Ill. App. 3d 1040 (1989), and *Sheffer*, 261 Ill. App. 3d 151.

In *Serritos*, Mary Serritos filed suit against the CTA alleging that she was injured when she slipped and fell on the icy and snow-covered steps of a CTA bus. *Serritos*, 153 Ill. App. 3d at 266. The trial court granted summary judgment in favor of the CTA, finding that the CTA had no duty to remove the snow or slush from the steps of its buses or to warn its passengers of that condition. *Serritos*, 153 Ill. App. 3d at 266.

On appeal, the appellate court noted that the CTA owed Ms. Serritos the highest duty of care. *Serritos*, 153 Ill. App. 3d at 270. However, the appellate court also noted that under the so-called "natural accumulations rule," "it has been held that natural accumulations of ice and snow, which were not caused or aggravated by the business or property owner, are not a basis for liability. [Citation.] Consequently, the owner of a business has no duty to remove or take other precautions against dangers inherent in natural accumulations of snow and ice." *Serritos*, 153 Ill. App. 3d at 269.

The appellate court held that the natural accumulations rule prevails over the carrier's duty of highest care:

> "Requiring [the CTA's] drivers to remedy a slushy condition on their steps which was brought about by snow being tracked into their vehicles by patrons would bring the transit system to a complete standstill. Therefore, we agree with the trial court that it is totally impracticable to impose such a duty upon [the CTA]." *Serritos*, 153 Ill. App. 3d at 271-72.

In *Shoemaker*, Sharon Shoemaker brought suit against Rush-Presbyterian-St. Luke's Medical Center (Rush) after falling while exiting an elevator in one of Rush's buildings. *Shoemaker*, 187 Ill. App. 3d at 1041. Ms. Shoemaker fell on a natural accumulation of water that had been tracked in from outside. *Shoemaker*, 187 Ill. App. 3d at 1041. The trial court granted summary judgment in favor of Rush, finding that it owed her no duty to remove the natural accumulations of water upon which she slipped. *Shoemaker*, 187 Ill. App. 3d at 1042.

On appeal, the appellate court noted that an elevator is considered a common carrier and, as such, that the operator owed Ms. Shoemaker the highest degree of care when she was in the act of alighting from the elevator. *Shoemaker*, 187 Ill. App. 3d at 1045. The appellate court

held, though, that notwithstanding the highest duty of care, the carrier has "no duty to clean up natural accumulations of water." *Shoemaker*, 187 Ill. App. 3d at 1045, citing *Serritos*, 153 Ill. App. 3d 265. Accordingly, the appellate court affirmed the grant of summary judgment in favor of Rush. *Shoemaker*, 187 Ill. App. 3d at 1046.

In *Sheffer*, Martha Sheffer brought suit against Simmons Airlines, Inc., d/b/a American Eagle (Simmons), after she alighted from a Simmons aircraft and slipped and fell on a patch of ice on her way to the airport terminal. *Sheffer*, 261 Ill. App. 3d at 151-52. A jury found Simmons liable for Sheffer's injuries. *Sheffer*, 261 Ill. App. 3d at 151-52.

On appeal, the appellate court noted that a common carrier owes its passengers the highest duty of care and that this duty compels the carrier to furnish the passengers an opportunity to safely alight from the conveyance and reach a place of safety. *Sheffer*, 261 Ill. App. 3d at 154. However, the appellate court also noted that "despite that heightened duty of care, a common carrier has no duty to clean up natural accumulations of snow, ice and water." *Sheffer*, 261 Ill. App. 3d at 154, citing *Shoemaker* and *Serritos*. The appellate court held:

> "Arguments can be made that a common carrier's duty of highest care should prevail over the natural accumulations rule. However, *Serritos* and *Shoemaker* held that the natural accumulations rule should prevail, and we choose to follow those decisions. The natural accumulations rule may be arbitrary in some situations [citation], *** but overall the certainty involved in a definite rule has been considered to outweigh any possibility of unfairness in unusual situations.
>
> * * *
>
> *** We see no reason to place a higher burden on common carriers than on other business entities for clearing natural accumulations of snow, ice or water. Common carriers are charged with the highest duty of care when transporting passengers because passengers must wholly rely upon a common carrier's proper maintenance and safe operation of its equipment during passage. The danger in this case did not arise from any failure by Simmons to maintain or safely operate its equipment; rather, when plaintiff fell on the ice patch on the tarmac, she had as much control over her own safety as if she had been walking across a parking lot. It would be anomalous to impose a duty on Simmons to remove natural accumulations of snow and ice due to its status as a common carrier, but to relieve a mere landowner or business owner from that same duty, and we refuse to do so." *Sheffer*, 261 Ill. App. 3d at 154-56.

■ In the present case, we continue to adhere to *Sheffer*, *Serritos*, and *Shoemaker* and hold that the natural accumulations rule prevails

over the CTA's duty of highest care. Accordingly, we reverse the denial of the CTA's motion for a directed verdict on the basis that the CTA owed no duty to plaintiff with respect to the natural accumulation of snow and ice upon which she fell.

Plaintiff contends *Miskunas v. Chicago Transit Authority*, 42 Ill. App. 3d 202 (1976), and *Wasserman v. City of Chicago*, 190 Ill. App. 3d 1064 (1989), compel a different result. In *Miskunas*, Mary Miskunas was riding a CTA bus that stopped in a crosswalk approximately three feet from the curb. *Miskunas*, 42 Ill. App. 3d at 202-03. Miskunas stepped down from the bus and slipped on some snow and ice on the ground. *Miskunas*, 42 Ill. App. 3d at 203. Miskunas brought suit against the CTA, alleging in pertinent part that the CTA had violated a municipal ordinance by bringing the bus to a stop with the right front wheel more than 18 inches from the curb. *Miskunas*, 42 Ill. App. 3d at 203. The trial court granted the CTA's motion for a directed verdict after the close of Miskunas' case. *Miskunas*, 42 Ill. App. 3d at 204. The appellate court reversed and remanded, holding that Miskunas had established a *prima facie* case that the CTA had violated the municipal ordinance by failing to stop within 18 inches of the curb. *Miskunas*, 42 Ill. App. 3d at 205. The natural accumulations rule was not mentioned in the majority opinion in *Miskunas*.

Unlike in *Miskunas*, the present case involves whether the natural accumulations rule prevails over the carrier's highest duty of care to its passengers. The present case does not involve the municipal ordinance at issue in *Miskunas*. Accordingly, *Miskunas* is inapposite.

In *Wasserman*, Ruth Wasserman brought suit against the CTA after she slipped and fell on snow as she stepped off a CTA bus. *Wasserman*, 190 Ill. App. 3d at 1065. The trial court granted summary judgment in favor of the CTA. *Wasserman*, 190 Ill. App. 3d at 1065. On appeal, the appellate court held that a common carrier owes the highest degree of care to its passengers, which includes providing its passengers with a safe place to alight from its bus. *Wasserman*, 190 Ill. App. 3d at 1066-67. The appellate court noted that the "evidence before the court established that the only point of egress from the bus was onto deep piles of snow with no passages for pedestrian traffic and that [Wasserman] fell after taking just one step." *Wasserman*, 190 Ill. App. 3d at 1067. The appellate court held that in view of the evidence, the trier of fact could find that Wasserman was required to exit the bus in an unsafe place. *Wasserman*, 190 Ill. App. 3d at 1067. As questions of material fact existed, the appellate court reversed the grant of summary judgment and remanded for further proceedings. *Wasserman*, 190 Ill. App. 3d at 1067.

In *Sheffer*, the appellate court reexamined *Wasserman* and noted that *Wasserman* arguably imposed a duty on the common carrier to clean up natural accumulations of snow and ice. *Sheffer*, 261 Ill. App. 3d at 155. However, the appellate court in *Sheffer* decided to follow the holdings of *Serritos* and *Shoemaker* that the natural accumulations rule prevails over the common carrier's highest duty of care; as such, the *Sheffer* court held that a common carrier owes no duty to its passengers to clean up and remove natural accumulations of snow and ice. *Sheffer*, 261 Ill. App. 3d at 154-55. As discussed, we adhere to *Sheffer*, *Serritos* and *Shoemaker*.

Next, plaintiff contends this court need not determine whether the natural accumulations rule prevails over the carrier's highest duty of care, because in this case the CTA could have allowed the plaintiff to alight underneath the small canopy on the platform, away from the accumulation of snow and ice. Specifically, plaintiff contends the CTA could have pulled the train further or lesser into the station, or required her to depart from a different car in the train, thereby allowing her to alight underneath the canopy. Plaintiff contends by allowing her to alight underneath the small canopy, the CTA would have satisfied its highest duty of care toward her without having to remove the natural accumulation of snow and ice elsewhere on the platform.

As discussed above, to recover for negligence and for wilful and wanton misconduct, plaintiff first must establish that the CTA owed her a duty of care, that it breached that duty, and that plaintiff's injuries proximately resulted from the breach. *Serritos*, 153 Ill. App. 3d at 268-69; *Wade*, 364 Ill. App. 3d at 781. To determine whether a duty exists, the court considers: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the CTA. *Aidroos v. Vance Uniformed Protection Services, Inc.*, 386 Ill. App. 3d 167, 172 (2008).

Plaintiff contends the CTA owed her a duty to ensure that she alight from the train under the small canopy on the platform, away from the snow and ice. Plaintiff is effectively asking this court to impose a duty on the CTA to analyze every one of its platforms, every single time that its trains pull into them, to determine which portion of the platforms has the least amount of snow or ice or has the most sand spread and is therefore, theoretically, the safest place upon which to alight.

To impose such a duty on the CTA would be impractical. The transit system would be brought to a standstill if passengers were not allowed to alight from their trains until a CTA train operator and/or other employee ran around the platform, taking measurements to

determine which portion of the platform currently had the least amount of snow or ice or the most sand spread. The slowdown of the transit system would be exacerbated as the CTA repeated this process every single time a new train arrived at the platform. The magnitude and consequences of imposing such a duty on the CTA would be overwhelmingly detrimental to the efficient performance of the transit system, and so we decline to impose it here.

As a result of our disposition of this case, we need not address the other arguments on appeal.

Reversed.

GALLAGHER and STEELE, JJ., concur.